NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3648
_____

HORNG TECHNICAL ENTERPRISE CO., LTD.

v.

SAKAR INTERNATIONAL, INC.;
DOES 1 through 100, inclusive

Sakar International, Inc.,

Appellant.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-cv-00816)
District Judge:  Honorable Stanley R. Chesler
_____

Submitted Under Third Circuit LAR 34.1(a)
June 22, 2011

Before:  CHAGARES, JORDAN and GREENAWAY, JR., *Circuit Judges*.

(Filed:  June 23, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Sakar International, Inc. ("Sakar"), appeals an order of the United States District Court for the District of New Jersey enforcing the settlement agreement between Sakar and Horng Technical Enterprise Co., LTD. ("Horng") on June 4, 2010 (the "Settlement Agreement"). Sakar argues that the District Court erred in concluding that the Settlement Agreement was enforceable even though a contractually-required signatory failed to sign within the prescribed 30-day period. For the following reasons, we will affirm.

## I.  Background

Sakar, a New York corporation with its principal place of business in New Jersey, is an importer and wholesaler of computer accessories. Horng, a Taiwanese corporation with its principal place of business in Taiwan, was a manufacturer of computer accessories.

In 2004, Horng delivered over $900,000 worth of computer accessories to Sakar in California and Michigan. In 2005, Horng sued Sakar in California state court over Sakar's alleged failure to pay for those accessories. The suit was subsequently removed to federal court and transferred to the District of New Jersey. Sometime thereafter, Horng was officially dissolved as a result of its failure to timely elect a Board of Directors. A Taiwanese liquidator, Mr. Chang Wen-Fong (the "Liquidator"), who was authorized to pursue litigation and other claims on behalf of Horng, continued the litigation. On June 2, 2010, the parties proceeded to trial, and on June 4, 2010, the third day of trial, the case settled and was dismissed with prejudice.

2

The handwritten Settlement Agreement, which was read into the record prior to the order of dismissal, provided that Sakar would pay $250,000 to the trust account of Horng's counsel in exchange for dismissal of the case and a release of liability. The Settlement Agreement also provided that the Liquidator must, within 30 days of June 4, 2010, sign the Settlement Agreement and mutual release and that the United States District Court for the District of New Jersey would retain jurisdiction to enforce the Settlement Agreement.[1]

Thereafter, the parties struggled to agree on a more formal memorialization of the Settlement Agreement and the procedures related to its signing. On June 29, 2010, after multiple exchanges, Horng sent to Sakar a revised memorialization of the Settlement Agreement reflecting the multiple demands made by Sakar. Horng indicated that the Liquidator would sign the settlement documents and requested that Sakar also sign. On June 30, 2010, Sakar responded with two additional demands and indicated that it would seek redress from the Court if Horng refused to accede to those demands. On July 8, 2010, Horng forwarded a further revised memorialization of the Settlement Agreement to Sakar reflecting Sakar's latest demands and again requested that Sakar sign the documents.

The next day, July 9, 2010, Sakar responded that the Liquidator had failed to sign within the 30-day period and so had failed to comply with the Settlement Agreement. In

---

[1] Because of the Fourth of July holiday, the parties appear to have considered July 6, 2010, as the end of that 30-day period.

3

response, Horng filed a Motion to Enforce the Settlement Agreement. On August 11, 2010, while litigation continued, the Liquidator signed the settlement documents.

After receiving the parties' positions in writing, the District Court held a teleconference with them. Sakar argued that the 30-day provision was a "time is of the essence" clause and that, by not having the Liquidator's signature by July 6, 2010, Horng had breached the Settlement Agreement and excused Sakar from performing. The District Court disagreed, concluding that the 30-day provision was not a "time is of the essence" clause and that some of the delay was attributable to Sakar imposing multiple conditions "which were neither explicitly or implicitly included in the agreement which was reached before the Court." (App. at 12.) Accordingly, the Court ordered Sakar to honor the Settlement Agreement and pay the $250,000 within 15 days.

Sakar timely appealed.

## II.    Discussion[2]

Federal courts exercising diversity jurisdiction generally apply the substantive law of the state in which they sit. *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1265 (3d Cir. 1991). Under New Jersey law, the "'validity of a contract is to be determined by the law

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. Contract interpretation, i.e., determining the meaning of contract terms, entails resolving questions of fact, and we review those factual findings for clear error. *John F. Harkins Co., Inc. v. Waldinger Corp.*, 796 F.2d 657, 659 (3d Cir. 1986). In contrast, contract construction, i.e., determining the legal operation of a contract, entails resolving questions of law, and our review of those questions is plenary. *Id.*

4

of the place of contract,'" *Cal. Natural, Inc. v. Nestle Holdings, Inc.*, 631 F. Supp. 465, 470 n.3 (D.N.J. 1986) (quoting *Colozzi v. Bevko*, 110 A.2d 545 (N.J. 1955)), which, in this instance, is New Jersey.  New Jersey law provides that, "if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract."  *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992).  That is so even if the initial writing is considered informal and is expected to be followed by "the execution of a more formal document."  *Berg Agency v. Sleepworld-Willingboro, Inc.*, 346 A.2d 419, 422 (N.J. Super. Ct. App. Div. 1975).

Here, the Settlement Agreement calls for payment of a definite sum in exchange for a release from liability.  Those terms are the essence of the settlement, and each party manifested an intent to be bound by those terms by signing the Settlement Agreement.  The Settlement Agreement, then, was an enforceable contract, notwithstanding the parties' desire to execute a more formal document after the fact.

Furthermore, the District Court did not err in determining that the Settlement Agreement required Sakar's performance, notwithstanding the Liquidator's having failed to sign within 30 days.  The Court's factual findings support two alternative bases for affirmance.  First, given the duration of the litigation and lack of explicit "time is of the essence" language in the Settlement Agreement, it was not error to find that time was not of the essence with respect to the Liquidator's signature.  The Liquidator's failure to sign within the specified period was thus not a material breach that would excuse Sakar from performing.  *See* 14 WILLISTON ON CONTRACTS § 43:7 (4th ed. 2011) (observing that,

5

"where there is no indication in the contract or finding that time is of the essence, a failure to perform the contract on the exact date specified is not deemed such a breach as will justify nonperformance by the other party"); *cf. Linan-Faye Constr. Co., Inc. v. Hous. Auth. of City of Camden*, 995 F. Supp. 520, 523 (D.N.J. 1998) (noting that conditioning performance on timely payment does not make time of the essence such that a delinquent payment will constitute a material breach excusing the other party's nonperformance).

Second, given Sakar's several additional demands during the 30-day period, it was not error to find that Sakar had, at least in part, contributed to the untimeliness of the Liquidator's signature. Considering the Liquidator's signature as a condition precedent to Sakar's performance, Sakar would not be excused from performing, since it contributed to the failure of the condition. *See* 15 WILLISTON ON CONTRACTS § 46:14 (4th ed. 2011) (observing that a condition precedent to a party's performance is waived where that party "contributes to the delay [of the other party's timely performance]"); *cf. Allstate Redevelopment Corp. v. Summit Assocs., Inc.,* 502 A.2d 1137, 1141 (N.J. Super. Ct. App. Div. 1985) (noting that, where a party "has acted in bad faith, that party will not escape liability on a contract even though the other party has failed to satisfy a condition precedent").

## III.  Conclusion

For the foregoing reasons, we will affirm.